## SAUQUOIT PAPER CO., Inc., v. WEISTOCK.
### Patent Appeal No. 2584.

Court of Customs and Patent Appeals.

Feb. 3, 1931.

Edward T. Fenwick, Edward G. Fenwick, and Charles R. Fenwick, of Mason, Fenwick & Lawrence, all of Washington, D. C., for appellant.

Herbert J. Jacobi and William J. Jacobi, both of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents reversing the decision of the acting Examiner of Interferences; the latter having sustained the opposition and adjudged that the applicant, appellee here, is not entitled to the registration for which she has made application.

The appellee, on August 5, 1927, made application for the registration of a trademark, the dominant part of which consisted of the words "Purple Cross," used upon toilet paper and wax paper. Appellant, on October 13, 1927, gave notice of opposition to the proposed registration, alleging that it was the prior owner and user of the words "Purple Cross" as a trade-mark upon toilet paper and kindred products, and that the use of said trade-mark by appellee would cause confusion with the mark owned and controlled by appellant, and that appellant would be damaged by the registration of such mark by appellee. This notice of opposition was found by the Commissioner of Patents to be

insufficient, for the reason, among other things, that it was not accompanied by specimens or facsimiles in duplicate of the mark actually used by the opposer, appellant here. On November 5, 1927, appellant filed a new notice of opposition to meet the objections raised by the Commissioner of Patents, and with this notice filed specimens of its mark, the notice of opposition referring to such specimens in the following language: "Specimens of the mark as used by this opposer are attached hereto."

This notice of opposition was verified by one John M. Ross, who, it appears, was the treasurer of appellant company. The specimens set out its trade-mark, of which the words "Purple Cross" were the dominant part, and at the bottom of the same there appeared the following:

"All infringements of this label will be prosecuted

"Trade Mark Registered U. S. Patent Office."

Appellee, in her answer to the notice of opposition, among other things, denied the right of the opposer to claim the assistance of the Patent Office, on the ground that said opposer was guilty of misbranding and making false representations in printing upon its labels, as shown in the specimens attached to the notice of opposition, the registration notice, "Trade Mark Registered U. S. Patent Office," alleging the fact to be that said opposer did not possess a certificate of registration of the alleged trade-mark appearing on said specimens, and that therefore, being guilty of unclean hands, it had no standing before the Patent Office in this proceeding. It is a fact that said mark had never been registered by appellant.

Testimony was taken by appellant; no testimony was taken by appellee, nor was she represented when the testimony upon behalf of appellant was taken.

Both tribunals of the Patent Office found that appellant had owned and used the mark pleaded as of a date prior to any claimed by the appellee. The acting Examiner of Interferences further found that, although misrepresentation by appellant existed at the time the notice of opposition was filed, the testimony showed that the use of the words "Trade Mark Registered U. S. Patent Office" by appellant had ceased, and that for that reason such misrepresentation could not be utilized as a basis for the equitable judgment adverse to the opposer that was sought by appellee. The Assistant Commissioner reversed the decision of the acting Examiner of Interferences upon the last ground, and held that appellant could not avail itself of the discontinuance of the misrepresentation after the filing of the notice of opposition; he further found that appellant was guilty of misrepresentation, in that the words "Trade Mark Registered U. S. Patent Office" constituted an untrue statement because the mark had not in fact been registered by appellant. He therefore held that the opposition should be dismissed.

It is no doubt true that the filing of the mark containing the words "Trade Mark Registered U. S. Patent Office," and the statement in the verified notice of opposition that the marks filed were specimens of the mark as used by the opposer, created a prima facie case of fraud against the public upon the part of appellant which, standing alone, justified dismissing the opposition.

We think, however, that in such case the party should be permitted to show mistake, if it can, and that there was no fraud in fact in its use of the trade-mark. Neither the decision of the acting Examiner of Interferences nor that of the Commissioner of Patents makes any reference to the testimony in behalf of appellant purporting to explain the purpose and use of the specimens of the trade-mark filed, and we think both tribunals must have overlooked such testimony.

It appears from the record that the "Purple Cross" label was originated in 1918 by the Seneca Paper Company of Geneva, N. Y., and that said company continued to do business until October, 1925, when it was reorganized and a new company was formed having the same corporate name; this new company continued to do business until 1927, when it went into bankruptcy; on October 7, 1927, appellant purchased from the trustee in bankruptcy of said company all of the labels and printing plates, together with all the right, title, and interest of the bankrupt Seneca Paper Company to the brand "Purple Cross" and the good will of its business pertaining thereto, and also a copyright registration of the "Purple Cross" label, dated February 27, 1925; that since said October 7, 1927, appellant has continued to manufacture and sell toilet paper under this brand; that on October 13, 1927, or within one week from the date of appellant's acquiring said trade-mark as heretofore stated, it filed its original notice of opposition herein, and on November 5, or less than one month after so acquiring the trade-mark, it filed its verified notice of opposition as hereinbefore set out.

It appears that appellant's predecessor used said label as a trade-mark long prior to February 25, 1925, which is the earliest date that appellee alleged her use of the same.

Said John M. Ross, treasurer of appellant company, was asked the following question and made the answer quoted:

"Q. What can you say as to the appearance of the notice, 'Trade Mark Registered U. S. Patent Office,' on the specimen labels which you filed in connection with this opposition proceeding? A. We purchased from the Seneca Paper Company, Inc., as may be seen on the bill of sale, a large quantity of Purple Cross labels. These bore the imprint, 'Copyright 1925, Seneca Paper Company, Inc.' Having authorized our attorney to apply for a trade-mark registration on this brand, and being under the impression that application for same must be accompanied by specimen labels bearing the imprint, 'Trade-Mark Registered U. S. Patent Office by Sauquoit Paper Co., Inc.,' we printed a few labels bearing this imprint, which were forwarded to our attorney. Subsequent printings of this label have borne the imprint, 'Copyright 1925, Sauquoit Paper Co., Inc.,' and the trade-mark registration notice has not appeared thereon."

It appears from this testimony that some time between October 7, 1927, and November 5, 1927, the specimens of the trade-mark filed were sent by appellant to its patent attorney; that is to say, within less than one month after it had acquired the right to use the trade-mark. The question is, Shall the explanation given by the witness Ross be accepted as satisfactory evidence that there was no fraud upon the part of appellant in the use of its trade-mark, and that the printing and filing of the specimens here in question were under a misapprehension upon the part of appellant company's officers as to the specimens required to be filed. If this explanation is not accepted, the decision of the Commissioner of Patents should be affirmed.

We think the statement must be accepted that appellant secured from the Seneca Paper Company labels bearing the imprint "Copyright 1925, Seneca Paper Co., Inc.," and that such labels were in its possession at the time that it sent the specimens here in question to its attorney. It is fair to conclude that appellant did not use the trade-mark "Purple Cross" upon goods for a greater period of time than one month previous to the filing of the second notice of opposition. If there had been any use of the trade-mark containing the words "Trade Mark Registered U. S. Patent Office," it could have been for only a short time, and it is to be noted that, within one week from the time it secured the rights of its predecessors to the trade-mark, it began this opposition proceeding, namely, on October 13, 1927; that is to say, within six days after it acquired the rights of its predecessors to the trade-mark, it began or attempted to begin this proceeding. We think this is a circumstance that is proper to be considered in weighing the testimony of said Ross hereinbefore quoted. It must be assumed that at least some days elapsed between the time that appellant's officers determined to begin this opposition and the date of the filing of the first notice of opposition, October 13, 1927. It would seem that, with an opposition proceeding in mind, appellant's officers would not have had printed a trade-mark containing the false statement for use upon its merchandise, thereby jeopardizing the rights that they were seeking to establish. Furthermore, if there was any intention upon the part of appellant's officers to defraud the public, one would hardly have expected them to furnish to the Patent Office evidence of the fraud when they might have filed the copyright label in their possession, containing the representation of the trade-mark, but not containing the words "Trade Mark Registered U. S. Patent Office."

In view of all of these circumstances, we think that the witness Ross stated the truth when he said that:

"* * * Having authorized our attorney to apply for a trade-mark registration on this brand, and being under the impression that application for same must be accompanied by specimen labels bearing the imprint, 'Trade Mark Registered U. S. Patent Office by Sauquoit Paper Co., Inc.,' we printed a few labels bearing this imprint, which were forwarded to our attorney. * * *"

We think the fair inference from this testimony is that all of such labels were forwarded to appellant's attorney for the purpose stated by the witness, that none of such labels were actually used upon goods of the appellant, and that appellant had no fraudulent intent in printing the words "Trade Mark Registered U. S. Patent Office" upon the labels, or in sending them to its attorney to be filed in the Patent Office.

The decision of the Commissioner of Patents is reversed, with directions to sustain the opposition of appellant and deny the application of appellee.

**Reversed.**